UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JONATHAN JOHNSON,

                                    Plaintiff,


                    -v.-                              9:07-CV-0158
                                                     (LEK)(GHL)

B. CONNOLLY, Doctor, Upstate C.F.;
N. SMITH, Administrative Nurse, Upstate C.F.;
K. MULVERHILL, Nurse, Upstate C.F.;
R. K. WOODS, Superintendent, Upstate C.F.;
LESTER N. WRIGHT, Deputy Commissioner, DOCS;
BRIAN FISCHER, Acting Commissioner, DOCS;
ATKINSON, Nurse, Upstate C.F.;
                                    Defendants.

_____

APPEARANCES:                                 OF COUNSEL:

JONATHAN JOHNSON, 89-A-1042
  Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO                          CHRISTINA L. ROBERTS-RYBA
Attorney General for the State of New York    Assistant Attorney General
The Capitol
Albany, NY 12224

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

## <u>REPORT-RECOMMENDATION</u>

        This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Generally, the Complaint of Jonathan Johnson ("Plaintiff") alleges that, between December 5,

2006, and February 7, 2007, at Upstate Correctional Facility ("Upstate C.F."), seven employees

of the New York State Department of Correctional Services ("Defendants") violated his constitutional rights under the Eighth Amendment by being deliberately indifferent to his serious medical needs, and/or failing to train and supervise their subordinate medical care providers. (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Currently pending before the Court is Defendant's motion to dismiss Plaintiff's action based on (1) Plaintiff's non-compliance with the so-called "Three Strikes Rule" and, in the alternative, (2) Plaintiff's failure to state a claim upon which relief may be granted (Dkt. No. 21). For the reasons that follow, I recommend that Defendants' motion to dismiss be granted or, in the alternative, that Plaintiff's Complaint be *sua sponte* dismissed under Fed. R. Civ. P. 11 as a sanction due to litigation abuses committed by Plaintiff.

## I.    SUMMARY OF PLAINTIFF'S COMPLAINT

In reading Plaintiff's Complaint, I have afforded his allegations the sort of liberal construction that every plaintiff's complaint is due under Fed. R. Civ. P. 8.

Of course, federal courts *normally* afford the pleadings filed by *pro se* civil rights litigants with an *extra* degree of liberal construction.  This is because, generally, *pro se* litigants are unfamiliar with legal terminology and the litigation process, and because the civil rights claims they assert are of a very serious nature.  However, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicude" that is normally afforded *pro se* litigants.[1]  Generally, the rationale for diminishing special solicitude (at least in the Second Circuit) is that the *pro se*

---

[1]    *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3 & n.17 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

litigant's extreme litigiousness demonstrates his *experience*, the lack of which is the reason for extending special solicitude to a *pro se* litigant in the first place.[2]  The Second Circuit has diminished this special solicitude, and/or indicated the acceptability of such a diminishment, on several occasions–***including two occasions involving Plaintiff***.  *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.).[3]

Similarly, I decide to do so, here, and I recommend the Court do the same.  To say that Plaintiff is no stranger to the court system would be a gross understatement.  A review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") System reveals that, before he filed the current action on February 7, 2007, Plaintiff, whose first name "Johnathan" is sometimes mis-spelled as "Jonathan," had filed at least *forty-six* (46) other federal district court *prisoner civil rights actions* alone (not including any federal district court habeas corpus actions, federal court appeals, state court actions, or state court appeals).[4]

---

[2]     *Koehl*, 2007 WL 2846905, at *3 & n.18 [citations omitted].

[3]     *See also Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *see also Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring).

[4]     Specifically, the docket sheets in the following 46 actions reveal that the prisoner civil rights actions were brought by Inmate Jonathan Johnson, bearing Department Identification Number "89-A-1042" (which is, in a very few instances, incorrectly listed as "90-A-1042"): (1)

Liberally construed, Plaintiff's Complaint alleges as follows:

(1) On December 5, 2006, when Plaintiff transferred from Elmira C.F. to Upstate C.F., he possessed a property bag containing "numerous prescription medications." (Dkt. No. 1, ¶ 6[a] [Plf.'s Compl.].) The "prescription medications" consisted of the following: (a) "Vitamin-E Lotions"; (b) hydrocortisone ointment; (c) clindamycin gel (commonly used for facial acne); (d) multi-Vitamins; and (e) Nasacort spray (commonly used for sinus allergies). (*Id*. at ¶ 6[b].) The first three medications were necessary to treat Plaintiff's skin "allergy to water," which caused him to experience "skin burns," "disfigurement, pain, sw[elling] and hives," when water was applied to him on his skin. (*Id*. at ¶ 6[j], [k], [l], [o].) The multi-vitamins were necessary to keep

_____

*Johnson v. Sokol*, 88-CV-1557; (2) *Johnson v. Schmidt*, 89-CV-0531 (E.D.N.Y.); (3) *Johnson v. Staviski*, 90-CV-0098 (W.D.N.Y.); (4) *Johnson v. Coughlin*, 90-CV-0748 (W.D.N.Y.); (5) *Johnson v. New York*, 90-CV-0825 (W.D.N.Y.); (6) *Johnson v. McAlin*, 90-CV-1118 (W.D.N.Y.); (7) *Johnson v. Scott*, 91-CV-1467 (E.D.N.Y.); (8) *Johnson v. Farlo*, 91-CV-1468 (E.D.N.Y.); (9) *Johnson v. Gardner*, 91-CV-1792 (E.D.N.Y.); (10) *Johnson v. Montalvo*, 91-CV-1793 (E.D.N.Y.); (11) *Johnson v. Scanlon*, 91-CV-1807 (E.D.N.Y.); (12) *Johnson v. Kenny*, 91-CV-4028 (E.D.N.Y.); (13) *Johnson v. Senkowski*, 92-CV-0429 (N.D.N.Y.); (14) *Johnson v. Smart*, 92-CV-4596 (S.D.N.Y.); (15) *Johnson v. Armitage*, 93-CV-0257 (N.D.N.Y.); (16) *Johnson v. Westcott*, 93-CV-0581 (N.D.N.Y.); (17) *Johnson v. Westcott*, 93-CV-0582 (N.D.N.Y.); (18) *Johnson v. Powell*, 93-CV-0583 (N.D.N.Y.); (19) *Johnson v. Vladyka*, 93-CV-0584 (N.D.N.Y.); (20) *Johnson v. Leonardo*, 93-CV-0585 (N.D.N.Y.); (21) *Johnson v. Stinson*, 94-CV-1152 (N.D.N.Y.); (22) *Johnson v. Shovah*, 95-CV-0064 (N.D.N.Y.); (23) *Johnson v. Stinson*, 95-CV-1078 (N.D.N.Y.); (24) *Johnson v. Westcott*, 95-CV-0367 (N.D.N.Y.); (25) *Johnson v. Calabrett*, 96-CV-2821 (E.D.N.Y.); (26) *Johnson v. James*, 96-CV-6221 (W.D.N.Y.); (27) *Johnson v. Cardona*, 97-CV-0185 (N.D.N.Y.); (28) *Johnson v. Eggersdorf*, 97-CV-0938 (N.D.N.Y.); (29) *Johnson v. Goord*, 97-CV-1329 (N.D.N.Y.); (30) *Johnson v. Goord*, 97-CV-1726 (N.D.N.Y.); (31) *Johnson v. Gummerson*, 97-CV-1727 (N.D.N.Y.); (32) *Johnson v. Goord*, 98-CV-0003 (N.D.N.Y.); (33) *Johnson v. Gummerson*, 98-CV-0004 (N.D.N.Y.); (34) *Johnson v. Blood*, 98-CV-0895 (N.D.N.Y.); (35) *Johnson v. Tremper*, 98-CV-1154 (N.D.N.Y.); (36) *Johnson v. Cronin*, 99-CV-0503 (N.D.N.Y.); (37) *Johnson v. Walker*, 99-CV-0500 (N.D.N.Y.); (38) *Johnson v. Perrea*, 99-CV-2216 (N.D.N.Y.); (39) *Johnson v. Ricks*, 00-CV-0325 (N.D.N.Y.); (40) *Johnson v. Stockwell*, 00-CV-0724 (N.D.N.Y.); (41) *Johnson v. Vanness*, 03-CV-6416 (W.D.N.Y.); (42) *Johnson v. Parison*, 04-CV-6594 (W.D.N.Y.); (43) *Johnson v. Barney*, 04-CV-10204 (S.D.N.Y.); (44) *Johnson v. Goord*, 05-CV-6084 (W.D.N.Y.); (45) *Johnson v. Knapp*, 05-CV-6254 (W.D.N.Y.); (46) *Johnson v. Worle*, 05-CV-6602 (W.D.N.Y.).

Plaintiff from feeling "weak and dizz[y]."  (*Id*. at ¶ 6[m].)  The Nasacort spray was necessary to

treat Plaintiff's "sinus problem."  (*Id*. at ¶ 6[o].)

(2) On December 5, 2006, Corrections Officer King (not a Defendant in this action) took

away from Plaintiff "numerous prescription medications," and brought the medications to

Defendant Atkinson (a nurse).  (*Id*. at ¶ 6[d].)  Defendant Atkinson refused to give these

medications back to Plaintiff because, she stated, "none of the prescription medications was

medically necessary . . . for Plaintiff."  (*Id*. at ¶ 6[c], [d], [e].)  Defendant Atkinson

communicated this belief to Defendant Connolly (a physician).  (*Id*. at ¶ 6[d].)

(3) At some point after December 5, 2006, Defendant Connolly discontinued all of the

aforementioned medications except the Nasacort spray.  (*Id*. at ¶ 6[f].)  At yet a later date, at

some  point between December 5, 2006, and February 7, 2007 (the date on which Plaintiff signed

the Complaint), Defendant Connolly discontinued a certain Nasacort spray "that was giv[en] to

plaintiff at the wrong medication time."  (*Id*. at ¶ 6[g].)

(4) At one or more points in time between December 5, 2006, and February 7, 2007,

Defendant Atkinson and Defendant Mulverhill (also a nurse) incorrectly stated on Plaintiff's

medical records that "Plaintiff has either not requested the [referenced] prescription medications,

or refus[ed] to take the prescription medications."  (*Id*. at ¶ 6[h].)

(5) At various more points in time between December 5, 2006, and February 7, 2007,

Plaintiff notified Defendant Smith (an administrative nurse), Defendant Woods (the facility

superintendent), Defendant Wright (a Deputy Commissioner of DOCS), and Defendant Fischer

(the Acting Commissioner of DOCS) of the discontinuation of his medications by Defendants

Atkinson, Mulverhill, Smith, and Connolly.  (*Id*. at ¶¶ 6[i], [n].)  These notifications occurred

5

through "letters of complaints and grievance complaints."  (*Id*.)

(6) As of February 7, 2007 (the date on which Plaintiff signed the Complaint), the referenced medications had not been returned to him.  (*Id*. at ¶¶ 6[i], [n].)

(7) Plaintiff has been putting butter from his meals on his face "to keep from rotte [sic] and disfigurement [sic] to date."  (*Id*. at ¶ 6[l].)

Based on these allegations, Plaintiff asserts a claim that all Defendants were deliberately indifferent to his serious medical needs, and a claim that the supervisory Defendants (i.e., Defendants Fischer, Wright, Woods) failed to properly supervise and train their subordinates. (*Id*. at ¶ 7.)

## II.    ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

Defendants' motion to dismiss is based on two alternative grounds: (1) Plaintiff's non-compliance with the so-called "Three Strikes Rule;" and (2) Plaintiff's failure to state a claim upon which relief may be granted.  (Dkt. No. 21, Part 3 [Defs.' Mem. of Law].)  Because Defendants' failure-to-state-a-claim argument, if successful, would result in the dismissal of Plaintiff's claims unconditionally (as opposed to their "Three Strikes" argument which would, if successful, result in the dismissal of Plaintiff's Complaint only if he fails to pay the Court's $350 filing fee), I address the failure-to-state-a-claim argument first.

### A.    Failure to State a Claim Upon Which Relief May Be Granted

Defendants argue that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted. (Dkt. No. 21, Part 3, at 3-8 [Defs.' Mem. of Law].) Defendants correctly recite the legal standard governing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), with one clarification.

Defendants state that "a motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief," citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) for that proposition. (Dkt. No. 21, Part 3, at 3 [Defs.' Mem. of Law].) Shortly after Defendants filed their Memorandum of Law (on May 17, 2007), the United States Supreme Court issued a decision, *Bell Atl. Corp. v. Twombly*, in which it "retire[d]" that famous proposition from *Conley v. Gibson*. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."). The Supreme Court in *Twombly* went on to clarify that the legal standard on a motion to dismiss for failure to state a claim involves an analysis of whether the plaintiff has *alleged facts plausibly suggesting* actionable conduct.[5]

_____

[5]    *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (holding that, for a plaintiff's complaint to state a claim upon which relief might be granted under Fed. R. Civ. P. 8 and 12, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," or, in other words, there must be "plausible grounds to infer [actionable conduct]"), *accord*, *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e

Applying this legal standard to the allegations set forth in Plaintiff's Complaint, I find that Plaintiff has failed to allege facts plausibly suggesting a claim for deliberate indifference to a serious medical need under the Eighth Amendment.

Generally, to state a claim for inadequate medical care under the United States Constitution, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance*, 143 F.3d at 702.

For the sake of brevity, I will assume that Plaintiff has alleged facts plausibly suggesting that, during the relevant time period, he possessed a serious medical need for purposes of the Eighth Amendment.  The problem, for Plaintiff's standpoint, is that he has not alleged facts plausibly suggesting that any Defendant in this action possessed the sort of mental state required in order for them to be deemed to have been *deliberately indifferent* to such a serious medical need.

---

believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

8

An official is "deliberately indifferent" to a serious medical need when he "'knows of and disregards an excessive risk to inmate health or safety.'"[6]  "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[7]  What this means, as a practical matter, is that "deliberate indifference describes a state of mind more blameworthy than negligence,"[8] one that is "equivalent to criminal recklessness."[9]  Here, there is no such criminal recklessness alleged in

---

[6]        *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

[7]        *Johnson*, 412 F.3d at 403 (citing *Farmer*, 511 U.S. at 837).

[8]        *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.  .  .  .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[9]        *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *cf. Farmer*, 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

Plaintiff's Complaint.  (*See* Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

      Plaintiff's Complaint, which is summarized in more detail above in Part I of this Report-

Recommendation, alleges facts plausibly suggesting only that his medical care providers

carelessly erred in discontinuing his medications (and incorrectly recorded the purported reason

for that discontinuation in his medical records), and that their supervisors carelessly failed to

intervene and order those medical care providers to resume his medications.  (*Id.*)  At most,

Plaintiff has alleged negligence.  However, negligence is not sufficient to state a claim for

deliberate indifference.  Nor is a disagreement over a treatment decision–which is the main thrust

of what Plaintiff is alleging here.  He did not like the medical decision made by Defendant

Connolly (a physician) to discontinue all of his medications (except his Nasacort).  This

disagreement with a medical judgment is simply not actionable under 42 U.S.C. § 1983.  *See*

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001)

("[D]isagreements [between a prisoner and prison officials] over medications . . . are not

adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at

worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation

omitted].  As the Second Circuit once observed:

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks

> . . . . We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .  The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .  The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

Turning to Plaintiff's failure-to-supervise-and-train claim, I find that Defendants are correct that Plaintiff has failed to allege facts plausibly suggesting that any of the supervisory Defendants (i.e., Defendants Fischer, Wright or Woods) was personally involved in the constitutional violations alleged, for the reasons set forth by Defendants in their Memorandum of Law.  (Dkt. No. 21, Part 3, at 7-8 [Defs.' Mem. of Law].)

I would only add one point.  Supervisory officials may not be held liable under 42 U.S.C. § 1983 merely because they hold a position of authority.[10]  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[11] Here, Plaintiff has not alleged facts plausibly suggesting that any of the supervisory Defendants directly participated in the (alleged) violations; that they were notified of any constitutional

---

[10]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[11]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

violation actually occurring; that they created or allowed to continue any policy or custom at all, much less any policy or custom under which the violation occurred; that they were grossly negligent in any way; or that they exhibited deliberate indifference to Plaintiff's serious medical needs in the way they refused to intervene after receiving his complaints.

For the above reasons, I recommend that the Court dismiss Plaintiff's Complaint due to his failure to allege facts plausibly suggesting that (1) any Defendant in this action was deliberately indifferent to any serious medical need possessed by Plaintiff, and (2) any of the supervisory Defendants (i.e., Fischer, Wright, Woods) were personally involved in the constitutional violations alleged.

Finally, as for the issue of whether the dismissal should be with or without prejudice, it should be noted that, generally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[12]  (One of the rationales for this rule is that, generally, *pro se* litigants, due to their inexperience, are unfamiliar with the court system and legal concepts and terminology.)  Notwithstanding this rule, however, even when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[13]  In particular,

---

[12]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[13]     *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting

an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[14]

Here, I recommend that the dismissal of Plaintiff's Complaint be with prejudice because the problems with Plaintiff's deliberate-indifference claim and failure-to-supervise-and-train claim are *substantive*, not merely *formal*.  Simply stated, if Plaintiff (an experienced, prolific litigant) could have alleged sufficient facts to state a viable claim, he would have done so.

**B.   Alternative Ground for Dismissal of Plaintiff's Complaint: "Three Strikes Rule"**

In the alternative, Defendants argue that Plaintiff's *in forma pauperis* status should be revoked, and his Complaint should be dismissed unless he pays the Court's filing fee, under the so-called "Three Strikes Rule."  (Dkt. No. 21, Part 3, at 2-3 [Defs.' Mem. of Law].)  The "Three Strikes Rule" is set forth in the federal statute governing *in forma pauperis* proceedings:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted*, unless the prisoner is under imminent danger of serious physical injury.

report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[14]      *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

28 U.S.C. § 1915(g) [emphasis added].  The power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding; in other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.[15]

### 1. Calculation of "Strikes"

The first thing that a court should do in performing a "three strikes" analysis is to determine the date on which the plaintiff "brought" the action for purposes of 28 U.S.C. § 1915(g).  The Complaint in this prisoner action was signed by Plaintiff on February 7, 2007. (Dkt. No. 1.)  Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing*, which is the date that the complaint was *signed*.[16]  As a result, I find that the date on which Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g) was February 7, 2007.

Defendants' argue, and Plaintiff does not contest, that, as of February 7, 2007, Plaintiff had acquired at least three strikes for purposes of 28 U.S.C. § 1915(g).  (*Compare* Dkt. No. 21,

---

[15]    *See, e.g.*, *Eady v. Lappin*, 05-CV-0824, 2007 WL 1531879, at *1 & n.1 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.); *Gill v. Pidlypchak*, 02-CV-1460, 2006 WL 3751340, at *5 (N.D.N.Y. Dec. 19, 2006) (Scullin, J.); *Polanco v. Burge*, 05-CV-0651, 2006 WL 2806574, at *2 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe*, 118 F. Supp.2d 172, 174 (D. Conn. 2000); *McFadden v. Parpan*, 16 F. Supp.2d 246, 247 (E.D.N.Y. 1998); *see also Rolle v. Garcia*, 04-CV-0312, Report-Recommendation (N.D.N.Y. Jan. 29, 2007) (Lowe, M.J.), *adopted on other grounds*, 04-CV-0312, 2007 WL 672679 (N.D.N.Y. Feb. 28, 2007) (Kahn, J.).

[16]    *See Shaw v. Superint., Attica Corr. Facility*, 03-CV-0610, 2007 WL 951459, at *3 n.3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.*, 03-CV-0681, 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

Part 3, at 2-3 [Defs.' Mem. of Law] *with* Dkt. No. 22 [Plf.'s Opp. Memo. of Law].)  As a result,

little need be said about Plaintiff's acquisition of strikes, except two things.

First, on February 28, 2005, District Judge Michael A. Telesca, of the United States

District Court for the Western District of New York, found that, as of February 18, 2005 (the

date of the complaint in that action), Plaintiff had acquired at least *five* strikes.  *See Johnson v.*

*Goord*, 05-CV-6084, Order at 2 (W.D.N.Y. filed Feb. 28, 2005) (Telesca, J.) [listing cases].

Similarly, on November 18, 2005, District Judge Charles L. Siragusa, also of the United States

District Court for the Western District of New York, found that, as of November 6, 2005 (the

date of the complaint in that action), Plaintiff had acquired at least *eight* strikes.  *See Johnson v.*

*Worle*, 05-CV-6602, Order at 2 (W.D.N.Y. filed Nov. 18, 2005) (Siragusa, J.) [listing cases].  As

a result, these rulings should be given preclusive effect here, under the doctrine of collateral

estoppel.

Second, after briefly reviewing Plaintiff's litigation history on the Federal Judiciary's

Public Access to Court Electronic Records ("PACER") Service, I have confirmed that, as of

February 7, 2007, he had clearly acquired *at least* three "strikes" for purposes of 28 U.S.C. §

1915(g): (1) *Johnson v. James*, 96-CV-6221 (W.D.N.Y.) (complaint dismissed for failure to state

a claim, and "strike" expressly earned, on 12/9/97); (2) *Johnson v. James*, No. 97-2955 (2d Cir.)

(appeal dismissed upon express finding of frivolousness on 8/31/98); and (3) *Johnson v. Ricks*,

No. 00-0150 (2d Cir.) (appeal dismissed as "lack[ing] arguable basis in law or fact" on

10/5/00).[17]  *See also Johnson v. Stockwell*, No. 00-0190 (2d Cir.) (appeal dismissed as "lack[ing]

_____

[17]      *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[A]n appeal on a matter of
law is frivolous where none of the legal points are arguable on their merits. . . .  By logical
extension, a complaint, containing as it does both factual allegations and legal conclusions, is

arguable basis in law or fact" on 10/5/00); *Johnson v. Parison*, No. 05-1157 (2d Cir.) (appeal

dismissed as "lack[ing] arguable basis in law or fact" on 12/21/05).

     For all of these reasons, I find that, when Plaintiff brought this action, he had acquired *at*

*least* three "strikes" for purposes of 28 U.S.C. § 1915(g).  However, that does not end our

inquiry, because the "Three Strikes Rule" contains an exception for prisoners who are "in

imminent danger of serious physical injury" when they bring their action.  28 U.S.C. § 1915(g).

### 2.       "Imminent Danger of Serious Physical Injury" Analysis

     As stated earlier, the "Three Strikes Rule," set forth in the federal statute governing *in*

*forma pauperis* proceedings, reads,

> *In no event shall a prisoner bring a civil action* or appeal a judgment
> in a civil action or proceeding under this section if the prisoner has, on
> 3 or more prior occasions, while incarcerated or detained in any
> facility, brought an action or appeal in a court of the United States that
> was dismissed on the grounds that it is frivolous, malicious, or fails to
> state a claim upon which relief may be granted, *unless the prisoner is*
> *under imminent danger of serious physical injury*.

28 U.S.C. § 1915(g) [emphasis added].

     Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent

danger of serious physical injury when they "bring a civil action," the imminent-danger exception

applies only when such danger exists *at the time the action is brought*.  *See Malik v. McGinnis*,

293 F.3d 559, 562-63 (2d Cir. 2002).  As the Second Circuit explained in *Malik*,

---

frivolous where it lacks an arguable basis either in law or fact.") [internal quotation marks and
citation omitted]; *Tavarez v. Reno*, 54 F.3d 109, 109 (2d Cir. 1995) ("An appeal is frivolous
where it lacks an arguable basis in law or fact.") (citing *Neitzke v. Williams*, 490 U.S. 319, 325
[1989]).

> We agree with our sister circuits that § 1915(g) allows
> prisoners to escape the three strikes rule only if "the prisoner *is* under
> imminent danger of serious physical injury." (emphasis added).
> Because § 1915(g) uses the present tense in setting forth the imminent
> danger exception, it is clear from the face of the statute that the danger
> must exist at the time the complaint is filed.  Further, "[b]y using the
> term 'imminent,' Congress indicated that it wanted to include a safety
> valve for the 'three strikes' rule to prevent impending harms, not those
> harms that had already occurred."  *Abdul-Akbar* [*v. McKelvie*], 239
> F.3d [307] at 315 [3d Cir. 2001].  Accordingly, the language of §
> 1915(g) makes clear that the "imminent danger" exception only applies
> to danger existing at the time the complaint is filed.

*Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002), *accord*, *Polanco v. Hopkins*, No. 07-

1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec. 6, 2007) (declining to overturn the Second

Circuit's time-of-filing interpretation set forth in *Malik*).

When determining whether a prisoner has qualified for the "imminent danger" exception,

courts look at the non-conclusory allegations in the plaintiff's complaint.[18]  We proceed, then, to

an analysis of the non-conclusory allegations of Plaintiff's Complaint.

Plaintiff's Complaint, which is summarized in more detail above in Part I of this Report-

---

[18]     *Welch v. Fisher*, 07-CV-0929, 2007 WL 3231992, at *1-2 (N.D.N.Y. Oct. 30,
2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious
physical injury) [citations omitted]; *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir.
2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding
whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist. of Columbia*,
463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether he qualifies [for the 'imminent danger'
exception], we look to the complaint . . . ."); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir.
2004) ( "[T]he issue [under § 1915(g)] is whether his complaint, as a whole, alleges imminent
danger of serious physical injury."); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)
("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations
to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin*, 144
F.3d 719, 726 (11th Cir. 1998) ("Prior to denying leave to proceed IFP, courts must review a
frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent
danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on
other grounds*, *Jones v. Block*, 127 S. Ct. 910 (2007).

Recommendation, does not even conclusorily allege that, at any time, Defendants withheld *all* medical care from him (such as responses to his sick call requests).  (*See* Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)  Nor does the Complaint even conclusorily allege that, at any time, the discomfort he experienced required emergency medical care.  (*Id*.)  Rather, the crux of Plaintiff's claim is that his medical care providers carelessly erred in discontinuing his medications, which is not even actionable conduct under 42 U.S.C. § 1983, as explained above in Part II.A. of this Report-Recommendation.  I note that analogous cases exist,[19] including some in which medical conditions that appear to have been more serious than is Plaintiff's alleged medical condition in this action were found not to present an *imminent danger of serious physical injury*.[20]

---

[19]     *See, e.g., Menefee v. Pramstaller*, 06-CV-12922, 2006 U.S. LEXIS 52384, at *3-4 (E.D. Mich. July 31, 2006) ("Plaintiff fails to allege that he is under imminent danger of future harm.  Rather, Plaintiff complains  that his medical needs are not being met regarding his dental care, *allergies*, podiatry issues, *skin discoloration*, lack of access to his eye glasses, etc.") [emphasis added]; *Williams v. Louisiana*, 07-CV-0602, 2007 U.S. Dist. LEXIS 46376, at *7, 11-12 (E.D. La. May 7, 2007) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged that he "has not been furnished a specialized diet for his diabetes and hypertension, nor has he been provided with eyeglasses, hearing aids, or dental plates," and he "complains of a *painful skin condition* and [that he] is in need of back and neck surgeries which had reportedly been recommended by his private physicians prior to him being incarcerated in 2004," but his attachments to his petition reveal that his medical complaints had not been ignored but had been "responded to in a reasonably prompt fashion") [emphasis added]); *see also, infra*, note 9 of this Report-Recommendation.

[20]     *See, e.g., Saahir v. Holligan*, 01-CV-0144, 2004 U.S. Dist. LEXIS 11516, at *2-3, 15  (N.D. Tex. June 24, 2004) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged that he was a "severe asthmatic" with "breathing problems," which were compounded by his exposure to "hazardous chemicals," "irritants," "pollutants," "harmful dust," "deadly . . . chloride gas," and "chemical fumes" in prison boot factory, requiring care at a hospital); *Reeves v. Alexander*, 07-CV-0125, 2007 U.S. Dist. LEXIS 70922, at *4 & n.1 (W.D. Mich. Sept. 24, 2007) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged that he was "being housed in an unsanitary environment which causes breathing difficulties as a result of his asthma[,] and bleeding and headaches as a result of allergies," but acknowledged that he was being provided at least some medical treatment).

18

In reaching this conclusion, I am not at all swayed by the fact that, on April 6, 2007, District Judge Charles J. Siragusa, of the Western District of New York, filed a Decision and Order ruling that a related complaint filed by Plaintiff did allege facts plausibly suggesting that Plaintiff was under an *imminent danger of serious physical injury* when he brought that action on February 7, 2007 (the same date on which he brought the current action). *See Johnson v. Connolly*, 07-CV-6077, Decision and Order (W.D.N.Y. filed Apr. 6, 2007) (Siragusa, J.) [Attached as "Exhibit 1" Hereto].

In the complaint addressed by Judge Siragusa, Plaintiff asserted two causes of action, one of which asserted a deliberate-indifference claim against Dr. Connolly, Nurse Smith, Nurse Mulverhill, and Nurse Atkinson, arising out of extremely similar if not the exact same events giving rise to his deliberate-indifference claim against those individuals in this action, namely, the deprivation of prescribed medications following his transfer from Elmira C.F. to Upstate C.F. late 2006.  (*Compare* Dkt. No. 1 [Plf.'s Compl., dated 2/7/07, and filed 2/12/07] *with Johnson v. Connolly*, 07-CV-6077, Complaint (W.D.N.Y., dated Feb. 7, 2007, and filed Feb. 15, 2007) [Attached as "Exhibit 2" Hereto].

For the moment, I will set aside the fact that Plaintiff appears to have engaged in the most outrageous and intentional form of duplicative litigation and forum-shopping, which I discuss below in Part II.C.2. of this Report-Recommendation.

The more crucial fact, for purposes of the imminent-danger analysis, is that Plaintiff's complaint in the Western District action alleged several facts not alleged in his Complaint in the current action, including (1) the fact that Plaintiff suffered from a "milk allergy" in addition to a skin allergy, (2) the fact that, due to "the lack of sinus spray," Plaintiff was, as of the date of

filing, "having problems breathing," "difficulty breathing," "headaches," and "pains," (3) the fact that Plaintiff was, as of the date on which he signed the complaint, "in immediate danger of being attacked by [his enemy] gang members," and (4) the fact that Plaintiff had supplemented the foregoing allegations in a motion to reconsider filed with the Western District (which attached various exhibits).  (*Compare* Dkt. No. 1, ¶ 6 [Plf.'s Compl.] *with* Complaint, "First Cause of Action," ¶¶ [e], [i], [m], "Second Cause of Action, ¶ [j] (W.D.N.Y.).

These last two facts were clearly critical to Judge Siragusa's decision.  *See Johnson v. Connolly*, 07-CV-6077, Decision and Order, at 3, 7 (W.D.N.Y. filed Feb. 15, 2007) (Siragusa, J.) (expressly relying on [1] factual allegation that Defendant Burge and someone from DOCS Classification and Movement had "subjected [Plaintiff] to a retaliatory transfer to a facility where plaintiff has known enemies," and [2] fact that "plaintiff has supplemented his allegations in his motion to reconsider"); *see also Johnson v. Connolly*, 07-CV-6077, Plf.'s Motion for Reconsideration (W.D.N.Y. filed March 8, 2007) [Attached as "Exhibit 3" Hereto].

I note that I have carefully reviewed Plaintiff's prior motion to supplement his Complaint, denied by Judge Kahn on July 20, 2007 (Dkt. No. 24), and I find that Plaintiff's proposed Supplemental Complaint—which regards Plaintiff's "stomach distress" from having to eat "diet loaf" between May 8, 2007, to May 19, 2007—does not present any factual allegations that would alter my above-stated conclusion (i.e., my conclusion that Plaintiff has failed to allege facts plausibly suggesting that when he filed this action on February 7, 2007, he was under imminent danger of serious physical injury).  (*See* Dkt. Nos. 18, Part 2 [Plf.'s Proposed Suppl. Compl.].)  I make the same finding with regard to the repetitive and conclusory assertions contained in Plaintiff's affirmation in opposition to Defendants' motion to dismiss.  (*See* Dkt. No. 22.)  In any

event, neither of these two documents should be used by the Court as effectively amending the allegations of Plaintiff's Complaint because his special status as a *pro se* litigant has been revoked due to his extraordinary litigation experience.

 For these reasons, I recommend that, in the alternative, Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ten (10) days from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $350 (the fee applicable at the time of filing), upon penalty of dismissal.

  **C.** **Second Alternative Ground for Dismissal of Plaintiff's Complaint: Material Misrepresentation to Court and Intentional Filing of Two Simultaneous Actions Asserting the Same Claim**

 In the alternative, I find that Plaintiff should be sanctioned for (1) making a material misrepresentation to the Court, in his sworn Complaint, about his previous litigation history, and (2) intentionally filing two simultaneous actions (one in this Court and the other in the Western District of New York) asserting the same claim.

  **1.** **Material Misrepresentation to Court**

 In Paragraph 5 of Plaintiff's sworn Complaint, he answered "Yes" to the question, "Have you ever filed any other lawsuits in any state and federal court relating to your imprisonment?" (Dkt. No. 1, ¶ 5[a] [Plf.'s Compl.].)  He then listed only *one* case when identifying those cases, even though he was specifically instructed, "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page."  (Dkt. No. 1, ¶ 5[b] [Plf.'s Compl.].)

 The problem is that, in answering this question, Plaintiff failed to disclose to the Court

*any* of the *forty-six* (46) other federal district court prisoner civil rights actions that he had filed before the date on which he signed his Complaint, on February 7, 2007.  *See*, *supra*, note 4 of this Report-Recommendation.  (For the sake of brevity, I will not even attempt to list the state court actions relating to his imprisonment that Plaintiff had filed as of that date.)

Generally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a); and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

Here, the information omitted by Plaintiff was certainly material for at least two reasons. First, Plaintiff's disclosure of his other cases would have alerted the Court of the action that he filed in the Western District of New York (the complaint in which was signed on the exact same day on which he signed the Complaint in this action), and caused the Court to discover that a deliberate-indifference claim in that action was the same as the deliberate-indifference claim in this current action.  *See*, *infra*, Part II.C.2. of this Report-Recommendation.  Second, this action has proceeded for over a year on the assumption that Plaintiff was telling the truth when he swore that, as of the date on which he signed his Complaint, he had filed only one other lawsuit in state

or federal court otherwise relating to his imprisonment.  Had Plaintiff answered truthfully, the

Court would have promptly (and without the necessity of Defendants having had to go to the

expense and effort of filing a motion) explored Plaintiff's prior litigation history, discovered the

above-described "strikes," and analyzed whether Plaintiff had alleged facts plausibly suggesting

that he was in imminent danger of serious physical injury.  I note that, while a plaintiff is under

no duty to provide this information in order to state an actionable civil rights claim, here,

Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore*

to the truthfulness of his answer.  There is simply no excuse for such a material misrepresentation

to the Court.

District judges from this Court have recently indicated a willingness to sanction *pro se*

litigants for making such material misrepresentations.  *See, e.g., Standley v. Dennison*, 05-CV-

1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo*

review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff

should be sanctioned for making a material misrepresentation to the Court in his complaint);

*Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *6 & n.32 (N.D.N.Y. July 11, 2007)

(McAcoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised

on alternative ground that the plaintiff should be sanctioned for making a material

misrepresentation to the Court in his complaint) [collecting cases].

Certainly, numerous other federal courts have so sanctioned *pro se* litigants.  *See, e.g.,*

*Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov. 26, 2007) (affirming

district court dismissal that was based on this ground); *Mathis v. Smith*, No. 05-13124, 181 Fed.

App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based

partially on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir.

Feb. 25, 2003) (affirming district court dismissal that was based on this ground); *Albright v.*

*Holden,* , 99 F.3d 1145, 1145 (9th Cir. 1996) (affirming district court dismissal that was based on

this ground).[21]

I note that I have carefully considered all less drastic sanctions and found them to be

inadequate and inappropriate remedies, given the particular circumstances of this case, and

Plaintiff's incorrigible propensity for abusing the litigation process.  As a result, I recommend

that, in the alternative, Plaintiff's Complaint be dismissed with prejudice as a sanction under Fed.

R. Civ. P. 11 for making a material misrepresentation to the Court, in his sworn Complaint,

about his previous litigation history.  *See* Fed. R. Civ. P. 11(b) ("By presenting to the court . . . a

pleading . . ., an . . . unrepresented party is certifying that . . . (1) it is not being presented for any

improper purpose . . . .; [and] (3) the allegations and other factual contentions have evidentiary

support . . . .").

### 2.    Duplicative, Simultaneous Filings

As mentioned above in Part II.B.2. of this Report-Recommendation, on February 7, 2007

(the date on which he signed the Complaint in this action), Plaintiff signed a prisoner civil rights

complaint in another action, which he filed in the United States District Court for the Western

---

[21]      *See also Hood v. Tompkins*, No. 05-16358, 197 Fed. App'x 818, 819 (11th Cir.
Aug. 7, 2006) (affirming district court dismissal on this ground), *accord*, *Dinkins v. Smalley*, 07-
CV-0043, 2008 WL 160699, at *3 & n.3 (S.D. Ga. Jan. 14, 2008) (adopting, on *de novo* review,
magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground)
[citing cases].  I note that the dismissals in *Hood v. Tompkins* and *Dinkins v. Smalley* were
without prejudice since the plaintiffs in those cases had not yet had an opportunity to file an
amended complaint.  However, here, Plaintiff has had such an opportunity.  (*See* Dkt. No. 6.)  As
a result, the dismissal should be *with prejudice*.

District of New York.  *See Johnson v. Connolly*, 07-CV-6077, Complaint (W.D.N.Y. dated Feb.

7, 2007; filed Feb. 15, 2007) [Attached as "Exhibit 2" Hereto].  In the complaint in *Johnson v.*

*Connolly*, Plaintiff asserted two causes of action, one of which asserted a deliberate-indifference

claim against Dr. Connolly, Nurse Smith, Nurse Mulverhill, and Nurse Atkinson, arising out of

extremely similar if not the exact same events giving rise to his deliberate-indifference claim

against those individuals in this action, namely, the deprivation of prescribed medications

following his transfer from Elmira C.F. to Upstate C.F. late 2006.  (*Compare* Dkt. No. 1 [Plf.'s

Compl. dated 2/7/07; filed 2/12/07] *with Johnson v. Connolly*, 07-CV-6077, Complaint

(W.D.N.Y. dated Feb. 7, 2007; filed Feb. 15, 2007) [Attached as "Exhibit 2" Hereto].

   More specifically, the deliberate-indifference claim asserted by Plaintiff in *Johnson v.*

*Connolly* arises out of events occurring before and after Plaintiff's transfer from Elmira C.F. to

Upstate C.F. on November 16, 2006.  *See Johnson v. Connolly*, 07-CV-6077, Complaint, "First

Cause of Action," ¶¶ (a)-(m) (W.D.N.Y.) [Attached as "Exhibit 2" Hereto].  With regard to the

events occurring after Plaintiff's arrival at Upstate C.F. (the relevant events for purposes of this

Report-Recommendation), Plaintiff alleges that, after transferring into Upstate C.F., he notified

Nurses Atkinson, Mulverhill and Smith of his skin allergy to water and need for his prescription

medications, but they "all refused to administer[] the prescription medications prescribed at

Elmira and Southport Corr. Facilit[ies]."  *Id.* at ¶¶ (f), (m).  Plaintiff alleges that the prescription

medications included "sinus spray" and medications for "his allergy to water" and his "skin

problem."  *Id.* at ¶¶ (e), (f), (i).  Plaintiff also alleges that Dr. Connolly and Nurse Smith

"contended that the prescription medications [were] not indicated [on] plaintiff's medical chart."

*Id.* at ¶ (g).  Plaintiff further alleges that "[t]o date Doctor Connolly has discontinued ALL

allergic prescription medications prescribed to Plaintiff [at] Elmira Correctional Facility." *Id.* at ¶ (h).  Finally, Plaintiff alleges that, he has suffered (1) facial "disfigurement," a "swollen" face, "hives," and a painful "burning" sensation upon his skin's contact with water as a result of being deprived of these medications, and (2) "weak[ness] and "dizz[iness]" due to the lack of vitamins. *Id.* at ¶¶ (j), (k), (l).

In short, this portion of Plaintiff's deliberate-indifference claim in *Johnson v. Connolly* is virtually identical to the deliberate-indifference claim asserted in this action.  *See*, *supra*, Part I of this Report-Recommendation.

This sort of duplicative litigation practice wastes an enormous about of judicial resources, not to mention the resources of the New York State Attorney General's Office.  Moreover, Plaintiff's attempt to shop around his claim to two different federal courts, hoping to double the chances that one will give him the relief he seeks, demonstrates a flagrant disrespect for the court system–something with which he is intimately familiar.  Simply stated, I believe he should be sanctioned for this sort of abusive litigation practice.  As stated above in Part II.C.1. of this Report-Recommendation, I have carefully considered all less drastic sanctions and found them to be inadequate and inappropriate remedies, given the particular circumstances of this case, and Plaintiff's incorrigible propensity for abusing the litigation process.

As a result, I recommend that, in the alternative, Plaintiff's Complaint be dismissed with prejudice as a sanction under Fed. R. Civ. P. 11 for intentionally filing two simultaneous actions (one in this Court and the other in the Western District of New York) asserting the same claim. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court . . . a pleading . . ., an . . . unrepresented party is certifying that . . . it is not being presented for any improper purpose, such as to harass

[anyone] or to cause . . . needless increase in the cost of litigation.").

ACCORDINGLY, it is

RECOMMENDED that Defendants' motion to dismiss (Dkt. No. 21) be **GRANTED** on

one of the two grounds asserted by Defendants (i.e., the failure to state a claim upon which relief

may be granted, or the revocation of Plaintiff's *in forma pauperis* status);[22] and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's Complaint be *sua sponte*

**DISMISSED** with prejudice as a sanction pursuant to Fed. R. Civ. P. 11 for committing

litigation abuses; and it is further

RECOMMENDED that the Court certify in writing, for purposes of 28 U.S.C. §

1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be

taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) [citation omitted]; 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 22, 2008
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[22]     If Defendants' motion to dismiss is granted based solely on the revocation of
Plaintiff's *in forma pauperis* status, I recommend that Plaintiff be given **TEN (10) DAYS** from
the date of the Court's final order with regard to Defendants' motion by which to pay the Court's
filing fee of $350 (the fee applicable at the time of filing), upon penalty of **DISMISSAL**.

27